No. 47.—THOMAS G. HALL, plaintiff in error, *vs.* EBENEZER PAGE, defendant.

[1.] As a general rule, Trover will not lie in favor of a tenant, in common against his co-tenant.

[2.] A special agent, by mingling his own goods with those of his principal, cannot create a tenancy in common.

[3.] A new trial will be granted by the Supreme Court where the record discloses no evidence whatever to sustain the verdict of the Jury, or if the verdict is *clearly against* the evidence.

[4.] Where an agent was to have *ninety* days within which to account for the sale of the articles consigned to him, the principal has no right of action until the expiration of the ninety days. And these facts being made clear to the Jury by the evidence, their verdict for the plaintiff will be set aside, and a new trial granted.

[5.] Collateral securities, pledged *bona fide* for the payment of a debt, are not subject to garnishment at the suit of other creditors.

Trover in Richmond Superior Court. Tried before Judge HOLT, January Term, 1848.

This was an action of Trover, for a promissory note, for seven hundred dollars, drawn by William E. Dearing and indorsed by William Dearing, and tried on this appeal.

The following is a brief of the evidence submitted to the Jury.

1. CARTER CRITTENDEN, sworn for plaintiff.

Heard plaintiff demand of defendant the note for which this suit is brought. Defendant refused to deliver it—told plaintiff to "go to hell*"—does not know the precise time, but it was immediately before this suit was brought.

CROSS EXAMINED.—In a subsequent conversation, heard both parties say that the conversation above testified to was immediately preceding arrest of defendant in this suit. In this subsequent conversation, plaintiff stated that the note in dispute was given for buggies defendant had sold for him—admitted that defendant was to have ninety days to dispose of the buggies or return them—some fifty or sixty days of that time was unexpired, when the suit was brought. In another conversation between witness and defendant, defendant said he received the four buggies as Page's—that they were carried to Athens as Page's—and sold as Page's.

2. WILLIAM E. DEARING'S deposition read:

Who testified, that he did purchase six buggies of the defendant, Thomas G. Hall; it was, as well as he recollects, during the month of August, eighteen hundred and forty-six, in the town of Athens. They were paid for in a note at six months, made by witness and indorsed by William Dearing.

Defendant stated, at the time of making said sale, as well as recollected, that he was making said sale on account of Mr. E. Page.

The note has not been paid, and is not yet due. The last time

NOTE.—Does this amount to a demand and refusal? *Quere.* *Reporter.*

he saw said note, it was in possession of Thomas G. Hall. He does not know what has become of said note.

The defendant did not tell him, at the time of said trade, that part of the buggies were his own, but sold them all, as already stated, as the property of Mr. Page. The defendant gave no reason for selling them as he did.

James Hulburt, sworn for defendant, was present at a conversation between the parties at the jail in Augusta, after defendant was committed under process in this suit. The two papers now exhibited were produced there. Plaintiff admitted that the two buggies at the bottom of the invoice, were defendant's property, and that he, plaintiff, had no interest in them. He also admitted that he had given defendant ninety days to pay for his buggies. He also admitted that his claim on defendant was for the $527 25 on the invoice only.

*Papers referred to, read to the Jury,* as follows :

1. Invoice of articles sent to Athens by E. Page, at prime cost, if sold to nett the amount clear of all charges, expense, commissions and defalcations, viz :

| | | | |
|---|---|---|---|
| 1847. | 1 Second hand leather top buggy, | $120 | 00 |
| July 27. | 1 Blue lined do. | 100 | 00 |
| | 1 Drab Boat body, | 110 | 00 |
| | 1 Fancy Drab | 110 | 00 |
| | Harness, 6 set, as per inv. J. T. Hungerford, | 82 | 00 |
| | 3 yards carpeting, at $1 75, | 5 | 25 |
| | | $527 | 25 |

| | | |
|---|---|---|
| Also, 1 blue lined, | 110 | |
| 1 blue lined, | 90 | |
| | $200 | |

$527$\frac{25}{100}$, at 90 days.

2. Received, Augusta, July 28, 1846, of Thos. G. Hall, a note on James Hulbert, for three hundred dollars—also, a note on Josiah Lewis, 135 dollars, as collaterals on goods sent to Athens, to be be sold on my account—said notes to be returned when said Hall settles for the goods or returns the same.        E. PAGE.

Amount claimed and contracted,    $527 25, at 90 days.

*Conceditur*—that J. Lewis' note for $135 has been paid to plaintiff, and that plaintiff is under garnishment by other credi-

tors of defendant for a larger amount than the collaterals—this payment and garnishment both subsequent to the bringing of this action, and the garnishment before the payment.

Witness understood from the parties, that defendant was to have ninety days within which to make return for the sales of the buggies.   When plaintiff made the admission, defendant asked him "why he had arrested him ?"   Plaintiff answered, that if he had made himself liable, defendant had his redress.

CROSS EXAMINED.—Plaintiff offered to settle with defendant if he would account for the $527 25.   Plaintiff said defendant was to have ninety days in which to return the buggies or account for their proceeds.   Hall was insolvent, with judgments against him, at the time he received the buggies; and plaintiff, as a prudent man, would not have parted with the title to the buggies.

*Rebutting.—Defendant's Letter to Plaintiff,* dated,

ATHENS, Aug. 1846.

[Extract relied on as follows.]

"*Dear Sir:* My transaction of yesterday has created more noise, perhaps, than any transaction ever made in Athens, of the same amount.   The buggy trade is all the talk.   The coach-makers are vexed, and the Hodgsons are clamorous against Page's work, that is no account and will not stand.   But Mr. Page has a reputation here, and Doctor Dearing is brought to aid, and 1 flatter myself the excitement will pass over and nobody hurt, and the reputation of the Page work will be sustained.   It could not have fallen into better hands.   My only misfortune in the matter is, it is at my expense.   Yet, I hope I shall eventually reap some benefit from the operation.   That, however, will depend upon your liberality."

Under the charge of the Court, the Jury found a verdict for the plaintiff.   Whereupon the defendant moved for a new trial, upon the following grounds :

I. Error in the Court in charging the Jury, in this—

1. That while the Court allowed the principle, "that one of two joint owners of a chattel cannot maintain trover against his fellow on mere proof of demand and refusal," the Court instructed the Jury that the rule had no application to this case.

2. In charging the Jury that the amount for which the plain-

tiff's property was sold by the defendant, could be recovered in this form of action, and that the defendant, in embracing in one note the proceeds of his own property and that of the plaintiff, was guilty of a wrong which could be redressed in this action.

3. In refusing to charge the jury, that the defendant being bound to account to the plaintiff for the sale of his property in ninety days, took a note at six months on his own responsibility, and could not be liable to the plaintiff in trover for that note.

II. Error in the Jury in this—

1. In finding for the plaintiff, when the evidence showed that no cause of action had accrued when the suit was commenced.

2. In rendering a verdict for the plaintiff for the full amount of the claim on defendant, when there was no evidence whatever that the two last items of the plaintiff's account were included in the note sued for.

3. In finding against the charge of the Court, it being proved that the defendant was to be allowed ninety days to return or account for the buggies or their proceeds, and the Court expressly charging that, if such were the fact, no suit could be brought till that time expired.

4. In refusing to allow the amount of one hundred thirty-five dollars, admitted to have been received on the collaterals in plaintiff's hands.

5. In giving damages for a frivolous appeal, when the verdict appealed from included both the amounts mentioned in the second and fourth specifications; and when the Court, in its charge, expressly told them that the case was involved in serious difficulty.

All which grounds, except the last, the Court on argument overruled; and if plaintiff would remit the damages for an appeal, refused to grant a new trial.

The defendant, by his attorney, excepted to the opinion of the Court on each and all of the foregoing grounds and specifications, (except the last.)

And as grounds of error, assigns :—

1. That the evidence clearly showed that the defendant was the owner of a part of the note sued on, and therefore the principle set forth in the first specification, of " *Error in the Court*," applied to the case was decisive of it.

2. In that the Judge decided that the plaintiff was the sole

Hall *vs* Page.

owner of the note in question; and that the defendant could not deprive him of such ownership by blending in one sale the property of the principal with his own, but in doing so, was guilty of a wrong.

3. In that the third specification of " Error in the Court,' was overruled.

4. In that the evidence showed that no cause of action had accrued at the time of action brought.

5. In that the Judge held that there was evidence of the last two items of the plaintiff's account, sufficient to authorize the jury to include the amount in their verdict.

6. In that it was clearly proved that the defendant was to be allowed ninety days to account for, or return the property received, which time had not expired when the suit was brought.

7. In that the amount of one hundred and thirty-five dollars, received by the plaintiff on his collateral security, ought to have been allowed in the verdict.

GOULD and JENKINS, for plaintiff in error.

MILLEDGE and MILLER, for defendant.

GOULD, for plaintiff in error.

I. *The damages are excessive.*

1. Plaintiff has realized $135 00 from collaterals placed in his hands, to secure this claim; which is not allowed in the verdict.

2- A charge for harness, &c., amounting to over $80 00, is included in the verdict, as to which no evidence whatever was offered.

II. *No action had accrued when the suit was brought.*

Defendant was to have 90 days to settle, which had not expired.

1. If he was a *purchaser* of the property, his credit was yet running.

2. If he was an agent *del credere*, he was not liable to be sued till the time expired.   *Story, S.* 215.   4 *M. & S.* 574.

3. An *ordinary agent* he was not, for he had given security and taken the risk of the sale; one of these three he must have been.

*III. Trover cannot lie in this case.*

If defendant is liable at all, it is in assumpsit.

1. He was not authorized to sell at six months, but had given security to respond in ninety days.

The note, therefore, was not taken as agent, but at his own risk, and is his own.

2. If plaintiff had any right to the note, he owned the whole or a part only.

If the whole, why was not a verdict asked for the amount of it ? But it is admitted that the plaintiff's property only sold for about two-thirds of the note.

If he owned part, it was as tenant in common with defendant—And,

One tenant in common of a chattel, cannot sue the other in trover, except for actual destruction. Possession of one is possession of both. *Co. Litt.* 200, *a.* *Cowp.* 450. 1 *T. R.* 658. *Salk.* 390. 1 *Taunt.* 241.

*By the Court,*—NISBET, J. delivering the opinion.

It appears by the record, that the defendant, acting as agent for the plaintiff below, sold certain goods for his principal, and at the same time a small amount of goods of his own ; and took in payment for the whole, a note upon six months' time. The plaintiff brought trover for the note. In the motion for a new trial, it is claimed that the Court below, admitting the proposition of the defendant, that trover will not lie in favor of one tenant in common of a chattel, against his co-tenant, except in case of the destruction of the joint property, yet erred, in ruling that the doctrine did not apply to this case. The counsel for the defendant below, who is the plaintiff here, asserts, that, inasmuch as the note for which the action was brought, was taken in payment of goods belonging in part to the defendant, he became thereby a tenant in common of the note with the plaintiff, and if so, the plaintiff has no right to bring trover for it against him. The Court held that an agent, by a wrong act, by an act without his powers, cannot create the relationship of tenancy in common with his principal, without his consent; that there is no tenancy in common in this case, and therefore the action will lie.

Hall *vs.* Page.

[1.] As a general rule, it is not denied anywhere, but that trover will not lie in favor of one tenant in common against his cotenant. The reason is, that the one tenant is as much entitled to the possession as the other. The possession of one is, in law, the possession of both.    *Co. Litt.* 200, *a. Cowp.* 450.    1 *T. R.* 658.    *Salk.* 390.    1 *Taunt,* 241.    2 *Leon,* 220, *case,* 278.    2 *Cr. M. & R.* 1.    5 *Tyr.* 551.    *Elementary books, title Trover.* 2 *Kelly,* 73.

An exception to this rule, is where there is a destruction or loss of the common property by one of the tenants.    *Barton vs. Williams,* 5.    *B. & Ald.* 395.    *Farrar vs. Beswick,* 1 *M. & W.* 688.    *Hyde vs. Stone,* 7 *Wend.* 354.    *Wilson vs. Reed,* 3 *Johns· R.* 175.    7 *Con. R.* 95.    2 *Kelly,* 73.

Another exception is found in the case of *a sale* of the whole property by one tenant.    Tenants in common having equal right of possession, and an undivided property, one has no right to dispose of the property and transfer the possession, to the injury of the other.    In this regard they are unlike partners.    *Wilson vs. Reed,* 3 *Johns. R.* 178, 179.    *Hyde vs. Stone,* 7 *Wend.* 354.    *White vs. Osborne,* 21 *Ibid,* 72    *Waddell vs Cook,* 2 *Hill's N. Y. R.* 47.    *Barton vs. Williams,* 5 *Barn. & Ald.* 395.    *Farr vs. Smith,* 9 *Wend.* 338.    *Lucas vs. Wasson,* 3 *Dev. R.* 398.    2 *Dev. & Bat.* 252.    2 *Kent Com.* 350, *note.    Hinds vs. Terry, Walker,* 80.    But see *Contra,* 4 *East,* 110.    *T. Raym.* 15.    7 *Con. R.* 95.    2 *Johns. R.* 468.    The weight of authority is in favor of the exception, as last stated, and it would seem too, that for the like reason, any user of the joint property, which amounts to a disclaimer of the title of the co-tenant, or which is inconsistent with his right of property, ought to constitute an additional exception.    There is no question, therefore, but that both the counsel and the Court below, rightly held the law, upon the general proposition.    We think with the Court, however, that this is not to be considered a tenancy in common.

[2.] A tenancy in common is created either by deed, (the act of the parties,) or by a destruction of an estate in joint tenancy, or in coparcenary.    Here there was no previous estate out of which a tenancy in common could spring, and no act of parties.    The record shows no assent of the plaintiff to the act of the defendant; blending in the note a claim in his own right, with one due to the plaintiff.    There was no accord—no agreement—no

Hall *vs.* Page.

assent to this act.   It was the act of the defendant, and his alone.
I might add that a tenancy in common may in this country be
created by descent.   Our view of the relationship of these par-
ties is, that by agreement, it constituted a special agency.   And of
this more anon.   If the defendant was the agent of the plaintiff, I
cannot perceive how it is possible for him to take any benefit from
the act of combining in one note, a small sum due to himself with
a larger sum due his principal.   That act was not within his powers
as agent, it was a violation of his duties to his principal, and was done
at his own peril.   It would be strange if he could, by any act of his
own, without the consent of his principal, annul or vary the obliga-
tions created by his contract of agency, and change altogether the
relationship which the law under that contract establishes.   He
could not thus vary the rule of his own liability, and secure to
himself rights inconsistent with his character as agent.   If he
could in one particular, he could as to all.   If he could defeat the
plaintiff's right of action for this note, or damages to the amount
of his interest in it, by making, at his own mere motion, a joint
tenancy with his principal, then the whole contract was at his
control.   Either he is agent, or not; if he is, then he cannot
be at one and the same time tenant in common with his principal,
of the property which is the subject matter of his agency.   The
rule upon this subject is severe against the agent.   The law holds
him to a stringent fidelity to his principal.   It exacts of him care, dil-
igence, and exclusive management of his fiduciary affairs.   He
may suffer loss, but can take no benefit by any thing he does,
other than what he contracts for.   One of his duties, is to keep
his own property separate and distinct from his principal's ; and if
he does confound them it is at his own risk.   If he mixes his
own with the property of his principal, and is unable to distinguish
the one from the other, the whole will be adjudged to his princi-
pal.   This is the rule at Law and in Equity.   The plaintiff, by
that rule, if it were impossible to distinguish what amount of this
note belonged to him, and what to the defendant, would be enti-
tled to recover the whole sum embraced in it.   Chancellor Kent
lays down the rule thus : "If a party having charge of the prop-
erty of others, so confounds it with his own that the line of dis-
tinction cannot be traced, all the inconvenience of the confusion
is thrown upon the party who produces it, and it is for him to
distinguish his own property or lose it.   If it be a case of dama-

Hall *vs.* Page.

ges," damages are given to the utmost value that the article will bear." · *Hart vs. Ten Eyck,* 2 *John. Ch. R.* 108.   1 *Stra.* 505. *Lupton vs. White,* 15 *Vesey,* 432.   2 *Vea. & Beame,* 265.   *Story on Ag.* 193.   *Paley on Agency, by Lloyd,* 48, 49, 51.   *Wren vs. Kirten,* 11 *Vesey,* 369, 382.   *Fletcher vs. Walker,* 3 *Madd. R.* 73. 3 *Chitty on Com. & Mancef, Ch.* 3, *p.* 215, 220.   *Smith's Merc. Law,* 48, 49, 50.   8 *Vesey,* 49, 50.   1 *Story's Eq. Jurisp. Sect.* 468, 623.

So we do not think that there is any error on this ground.

[3.] According to the evidence, the defendant became the agent of the plaintiff to sell an invoice of buggies, harness and carpeting for him.   The goods were delivered to the defendant.   By the contract, no compensation is provided for the agent.   He was to respond to the plaintiff, if the goods were sold, in the amount of the invoice prices, "clear of all charges, expenses, commissions, and defalcations," and was to have ninety days within which to dispose of the buggies, &c., or return them.   The defendant having sold all the goods, as the plaintiff alleges, and taken a note at six months for the price, the plaintiff, before the expiration of 90 days, brings suit for the note, setting up no claim to so much of it, as embraced the price of two buggies which belonged to the defendant.   Upon the hearing the Jury rendered a verdict for the plaintiff for the whole amount of the invoice claimed by him. One ground for a new trial taken by the defendant, is that the Jury found contrary to evidence, in this, *that there was no evidence whatever adduced on the trial, of the sale by the defendant of the harness and carpeting mentioned in the two last items of the invoice.* The Court refused the rule on this ground, and that is assigned as error.   The criterion of damages for the plaintiff, if entitled to recover at all in this action, is, the invoice price of such of the articles as he did in fact, sell.   By the contract, he was not bound to sell; he undertook to respond to the plaintiff *if the goods were sold.*   And the plaintiff was proven to have admitted that he had 90 days within which to dispose of or *return them.*   The plaintiff's verdict, therefore, ought to have been for the price of the articles sold—no more and no less.   Applications for new trials are addressed to the sound discretion of the Court.   And when asked because of a finding of the Jury contrary to evidence, are rarely granted.   As the Juries are the judges of the facts, if there be any evidence to sustain a verdict, it ought not to be disturbed

but for a good cause.  The Court, however, must have the power of controlling an unjust verdict, and with it is left the decision of the question whether the verdict be unjust or not.  The Court will, although with great carefulness, and only in cases of manifest and flagrant injustice, set aside a verdict where there is confessedly some evidence to sustain it.  The Jury may be demonstrated to have been corrupted—they may have acted under the influence of violent and almost irresistible excitement from without an·influence so great as to bias the calmest and most honest minds —the parties may have been surprised by a case falsely made upon the trial, it being in the last resort—the evidence may be so overwhelming in its aggregate weight against the verdict, as to leave no room to doubt of its flagrant injustice.  Besides these instances, it may be safely asserted that where manifest injustice, on any account, has been done to a party, he ought to be entitled to a re-hearing.  "If unjust verdicts, (says Lord Mansfield, after enumerating several grounds upon which the Court may interfere,) obtained under these, and a thousand like circumstances, were to be conclusive forever, the determination of civil property, in this method of trial, would be very precarious, and unsatisfactory.  It.is absolutely necessary to justice, that there should, upon many occasions, be opportunities of reconsidering the cause by a new trial."  1 *Burrow*, 393.  1 *Tidd's Prac.* 905.  Any one conversant with our mode of Equity trials, and with the organization of our Court of Chancery, must feel that the power to set aside the verdict of a Jury, is peculiarly necessary there.  In that Court, the most involved, intricate, and the vastest estates, are often submitted to a Jury to settle.  With no adequate time, or adequate ability for such a service, or adequate conveniences for the service, no wonder that, with the best intentions, the most ruinous mistakes are sometimes made by the purest men.  And what if there was no remedial power anywhere?  Why, our whole system would be justly censurable for affording no sufficient protection to the rights of property.

If the finding of the Jury be *clearly against evidence*, or *manifestly without evidence*, the Court, I hold, has no discretion, but is bound, in Law, to grant a new trial.  There is nothing in the Laws, the Constitution, or in Magna Charta, or in the great principle of Jury trials, which can justify, or for a moment tolerate a verdict without evidence, or contrary to all the evidence.

Hall *vs.* Page.

The Law will permit no such verdict ; the Juries have no power to render it, and no Court should permit it to stand. You cannot predicate discretion of such a case. It is a case where there is none. There have been cases, particularly on the criminal side of the Court, or for penalties called by Lord Kenyon *hard actions,* where new trials have been refused, although the verdict be without evidence or contrary to evidence, provided it be consistent with the conscience, justice and equity of the case. Now, that there have been such cases, I know, (see *Salk.* 644, 648. 4 *Burrow,* 469,) and that there may be again I can well imagine ; but *hard actions* is not the rule, they constitute the exception. And in my judgment the exception ought to be watched with diligence. If a latitude so large as to find in any case without evidence, or contrary to the clear and manifest uncontradicted proof is allowed, it is an obvious remark to say that it is greatly liable to abuse, even with all the vigilance of the Court exerted to confine it to cases where the verdict is consistent with conscience, justice, and equity. A new trial may be moved then, on account of the error or mistake of the Jury in finding a verdict without, or contrary to evidence. 1 *Burrow,* 12, 54.. 3 *Ibid,* 665. 2 *Ken.* 375, *S. C.* 2 *Burrow,* 936. 3 *Bar. & Ald.* 62. 10 *Moore,* 337. 3 *Bing.* 610. 4 *Bing.* 195. 2 *Tidd's Prac.* 908. 6 *Mass.* 261. 1 *Conn.* 472. 2 *N. & M.* 261. 1 *McCord,* 557. 3 *J. J. Marsh,* 440. 1 *Bailey,* 479. 3 *Har. & J.* 9.

The plaintiff, we have stated, is entitled to recover the invoice price of the articles sold by the defendant. If there is no evidence that the harness and carpeting were sold, the Jury had no right to render a verdict for them, and the new trial ought to have been awarded. We find no evidence that they were sold. The whole of the testimony relates to the sale of *buggies*—they are mentioned by the witness, who proved the sale, as the articles bought by him of the defendant—harness and carpeting are not named in a single instance, and the plaintiff, in a conversation testified to, himself admits that the note was given for *buggies.* Nor are any circumstances or facts proven, from which it can be inferred that they were sold. The delivery of the harness and carpeting to the defendant was proven, but we are not, nor were the Jury at liberty to infer, from that fact, their sale. The defendant's liability in this action does not grow out of the delivery, but out of the sale. One other circumstance relied upon, is proof that the plain-

tiff set up a claim to the amount of the invoice, in which amount the prices of these articles are included. *That* is not evidence, even if made directly to the defendant, unless his silence or express assent was also proven. Neither was proven. From aught that appears from the record, the defendant made against that claim, so far as these items are concerned, the most vehement protestations. *Carter & Wife vs. Buchanan, 3 Kelly,* 522. Uncertain, indeed, would the rights of parties be, if a verdict could be allowed to stand, which is founded on an inference drawn from a statement, not itself legally in evidence, made by the party in whose favor it was rendered. It was argued that proof of the sale of *buggies,* is proof of the sale of harness and buggy carpeting. This idea seems to be founded upon the assumption that harness for the horse that draws the buggy, and carpeting to cover its floor, is, in some sense, part and parcel of the buggy. I apprehend that Courts, lawyers, merchants, and manufacturers, would find no difficulty in denying the rightfulness of the assumption. Mr. Dearing, who bought the buggies, would hardly like to be held bound by that purchase, for harness for each buggy. It would be rather hard to hold him a purchaser of harness, because he would be unable to use a buggy without it ; or a carpet, because a carpet would protect the floor, and make it more comfortable. Harness no more goes with a buggy, than a saddle with the horse, —and carpeting no more goes with a buggy, than with a dwelling-house. They are different articles of merchandise, and were separately invoiced. I find in all this record, nothing other than what I have stated, which remotely looks like evidence. If justice is to be administered according to law, then upon this ground this defendant ought to have a new trial, and we think the presiding Judge erred in not granting it.

[4.] The next exception is of like character with the one last reviewed, in this, that it grows out of a refusal of the Court to order a new trial, because the verdict was contrary to evidence. The presiding Judge instructed the Jury, that if they believed, that by the contract between the parties, the defendant was to have 90 days within which to pay for the buggies, or return them; they ought find for him, for in that event (the action having been instituted before the expiration of that time) the plaintiff had no right of action. If this was the contract, the plaintiff clearly had no right of action. This was a special agency. Upon the evidence

Hall *vs.* Page.

we can put but one construction. It establishes a contract, by virtue of which, the defendant became the agent of the plaintiff without responsibility, for 90 days. An agency in some respects like a *del credere* commission. What is the evidence? One witness testifies to the admission of the plaintiff, that the defendant was to have 90 days to pay for the goods. Another, that the plaintiff admitted, that the defendant was to have 90 days to dispose of, or return them. At the foot of the invoice of the goods, which was read in evidence, and in the hand-writing of the plaintiff, are the words and figures, "$527$\frac{23}{100}$ at 90 days." This sum of $527 23 corresponds with the amount of the invoice. *At 90 days*, is well understood to indicate, when thus appended to the bill of goods, that it was payable in 90 days. So also, at the foot of a receipt given by the plaintiff to the defendant, on the day the goods were delivered to him, for collateral securities for this debt, which was also read in evidence, is the following statement in the hand writing of the plaintiff: " amount claimed and contracted, $527 22, at 90 days." Which statement indicates the same thing. This is *all* the evidence. And all on one side. It came from witnesses unimpeached and documents unimpeachable. In the light of the Court's instructions, it is difficult to imagine how the Jury could find that a credit of 90 days, was not given. It was given according to this record. No compensation of any kind is provided in the contract for the defendant. And no doubt the 90 days (within which he might turn over the money to advantage, or on account of which he might sell the goods for more than the invoice,) was in part, the consideration moving him to enter upon this agency. It was to him the essence of the contract. And as the verdict was contrary to the evidence, it must be set aside. It is objected that new trials are to be left to the sound discretion of the Court; particularly when asked upon the ground of an erroneous verdict. Because, being a witness to the trial, the presiding Judge is better qualified to decide whether substantial justice has been done; *therefore*, say counsel, this Court ought not to interfere and control his discretion. These propositions are generally true. We have before so recognised them. We have in several instances said, that we would interpose only in extreme cases—in cases that are " strong and unequivocal"—or of " gross injustice "—or where there " was *no* ev-

idence," and I will now add, where the verdict is *palpably contrary* to the evidence. In Criminal cases we hold the rule of *non*-interference more strictly than in Civil; because the Juries are in those cases judges of the law, as well as the facts. To use the language of this Court, in *Jones vs. The State of Georgia*, to authorize our interference in a criminal case, with the verdict, it must be " a very naked, bald case as to the facts," or a " very clear case of error in Law." 1 *Kelly*, 618. 2 *Kelly*, 153. 3 *Kelly*, 322. This is a civil case, and one that is " strong and unequivocal." A fit case for the application of the corrective power of this Court.

[5.] On the day that the goods were delivered to the defendant, the plaintiff received from him two notes, as collateral security, for the payment of the price of them. One of these notes, $135 in amount, was paid to him. The payment was after this suit was commenced, and subsequent to the service of a process of garnishment upon the plaintiff, sued out at the instance of other creditors of the defendant. Upon the motion for a new trial, it was claimed that the verdict was erroneous, in this; that this sum of $135 was not allowed as a credit to the defendant. The Court, upon this point, ruled, "that by the evidence this sum was held subject to summons of garnishment at the instance of Hall's (the defendant's) creditors. It is very certain that either Hall or his creditors have a right to that money. Both cannot have it, and Page, (the plaintiff,) cannot be delayed in his suit until the controversy between Hall and his creditors shall be ended. The Jury, therefore, properly refused to abate Page's damages for that sum." The opinion of the Court thus expressed, is excepted to. We cannot assent to the doctrine, that collateral securities, pledged *bona fide* for the payment of a debt without any trust reserved, belongs to the pledger or his creditors. That is to say, that they belong to him or them, in any sense, which will defeat the pledgee's right to them, or, which is the same thing, to money raised on them as security for his debt. That right is paramount to the rights of other creditors, and is good against the pledger himself, until the debt is paid. The pendency of a garnishment makes no difference. The pendency of this suit assumes that the debt is due. If this action can be sustained—if that assumption be true—upon the trial, it was competent for the Court to appropriate the money received on the collaterals, to the plaintiff, and of

course to credit the defendant. It ought to have been so appropriated. There was no necessity to await an issue on the garnishment. The Court, on the trial of this suit, had jurisdiction of the matter. It did, in fact, exercise that jurisdiction by determining that this money belonged to the defendant or his creditors. If it belonged to the defendant, it was pledged to pay this very debt. The creditors of the defendant have no rights in it, until the pledgee is paid. There could, therefore, be no controversy about.it, between the defendant and the creditors, until the debt of the plaintiff is paid. But the debt, by the record, is not paid. The very question is, shall it be *now* paid, to the extent of the money in hand? The plaintiff is not delayed at all. He is expedited; for a judgment that this money be allowed as a credit to the defendant, is an instantaneous payment to him. An appropriation in this way to the plaintiff, would protect him on the trial of the garnishment. Whether appropriated or not, his rights in this money are paramount to those of the garnisheeing creditors. There is nothing in this record, it may be proper to remark, which impeaches the fairness of this pledge. It is not obnoxious to the Act of 1818, or any other law of the State. Upon the traverse of the plaintiff's answer to the garnishment, (he answering truly, as this record discloses the facts,) I apprehend that the garnisheeing creditors could not get a judgment against the plaintiff, until they had first proven that his debt was paid. In that event, it is true, these collaterals and this money would belong to the defendant or his creditors. But only in that event.

We examine this doctrine a little. We say that the deposit of these notes in the hands of the plaintiff, as collateral security for this debt, is a *pawn* or *pledge*. A pledge is a bailment of personal property as security for some debt or engagement. *Story on Bail. Sect.* 286. Ordinarily, goods and chattels are the subject of pledges; but money, debts, negotiable instruments, choses in action, &c. may by the Common Law be delivered in pledge. 1 *Vesey*, 278. 9 *Mod. R.* 278. 3 *Atk.* 303. 10 *Johns. R.* 471, 475. 2 *Taunt. R.* 268. 13 *Mass.* 105. 15 *Ibid*, 389. 12 *John. R.* 146. *Story, Bail. Sect.* 290.

What are the rights of the pledgee in the thing pledged generally? In virtue of the pawn, he acquires a special property in the thing, and is entitled to the *exclusive* possession of it, during the time, *and for the objects for which it is pledged. Story on Bail. Sect.* 303. *Jones on Bail.* 80. 2 *Caine Cas. in Err.* 202. 12

*John. R.* 146.    1 *Bulst.* 29.    *Cro. Jac.* 244.    2 *Ld. Raym.* 909, 916.    2 *Kent, Com.* 578, 585, 4 *Edit.*    1 *Bell's Com. Sect.* 200, 4 *Edit.* 20 *Pick.* 399, 405.    12 *Ibid,* 316.    The right of possession is exclusive—that is, it is good against all the world, for the purpose for which it is pledged—in this case, that purpose is the payment of a debt.    For *that purpose,* the right to the thing is perfect.    It yields to no other right which did not attach upon it, in the shape of a lien, prior pledge, or some claim existing prior to the pledge, and good in law.    It is perfect against the pledger. For if he wrongfully get possession, a suit in favor of the pawnee will lie against him for the thing or for damages.    He can bring an action for it, also against a stranger, or an action against the stranger for damages.    2 *Saund. R.* 47, *noe.*    8 *Pick.* 333.    2 *Kent Com.* 585, 4 *Edit.*    *Story on Bails, Sect.* 303.    5 *Binn. R.* 457.

He has also a right to sell the pledge where there has been a default in the pledger ; if there is no stipulated time ·when the debt shall be paid, the pawnee may sell upon demand and notice. *Story on Bail. Sect.* 308.    2 *Kent Com.* 581, 582, 4 *Edit.*    2 *Story's Eq. Jurisp. Sect.* 1031 *to* 1033.    *Holt's N. P. R.* 385.    He may file a bill in Equity for foreclosure and sale, or upon demand and notice proceed to sell, *ex mero motu,* at his election.    1 *Vesey,* 278, 12 *Johns. R.* 146.    2 *Story's Eq. Jurisp. Sects.* 1031, 1033.    12 *Wend.* 61.    2 *John. Ch. R.* 62.    *Story's Bails, Sect.* 310.    These are the principal rights of the pawnee.    What, specially, are the rights of the pawnee of negotiable securities ?    He may recover and receive the money due thereon ; he may bring suit upon them in his own name.    *Story on Bails, Sect.* 321.    15 *Mass.* 534.    12 *John.* 146.    He may sell them, and if he sells to a *bona fide* purchaser, the latter acquires an absolute property, if he buys without notice.    *Story's Bail. Sect,* 322.    1 *Story's Eq. Jurisp. Sect.* 434, 435.    *Story on Agency, Sects.* 126, 127, 128, 129, 130.    13 *Mass.* 105.    15 *Ibid,* 389, 534.    12 *John. R.* 146.    1 *Bos. & Pul.* 143.    *Doug.* 633.    3 *Atk.* 56.    1 *Burrow,* 452.    1 *Bell's Com. Sect.* 412, 4 *Edit.*    *Matthews vs. Poythress,* 4 *Kel.* 387.

It is not necessary to pursue this subject in detail.    The pawnee is entitled to receive the money due on his collateral securities, and to hold it against his pawner and all the world, until he is paid.    When a pledge is made for the benefit of the pledgee and a third person, who is also a creditor, and the fund raised is insufficient to pay both, the pledgee, being a creditor in posses-

sion, is entitled to preference.    According to the idea of the Roman Law, " *In pari causa possessor potior haberi debet.*"    12 *Mass.* 321.    *Story on Bail,* *Sect.* 313.    If this is true as to other creditors, when there is a stipulation in their behalf, *a fortiori,* it is true as to creditors generally, as to whom there is no stipulation.    The rights of the holder of negotiable instruments as collateral securities, in them, were considered by this Court in the case of *Bond vs. The Central Bank,* 2 *Kelly,* 106, and in *Gibson vs. Conner,* 3 *Kelly,* 52, 53.    In the latter case, we say :    " The transferor parts with, ahd the transferee acquires the legal title to the negotiable paper thus transferred—the latter may sue on it in his own name, and although the original debt is not extinguished, the creditor has the right to apply the proceeds of the securities, when realized, to its extinction—nay, he is bound to do it, and whatever he does realize on them is a payment *pro tanto.*"    If it be the right of the pledgee to apply money collected on the securities, it is the right of the pledger to consider money thus in hand as a payment.    If such is the law of the case, he (the defendant) is entitled, the case being made, to have it so declared, and to have a credit on the original debt.    This the Court ought to do, if for no other reason than to avoid litigation.    As before stated, the Court had jurisdiction, in this case, of this subject matter, and we think it erred in not ruling that this money was by law to be appropriated to the plaintiff's debt, and as a consequence, that the defendant was entitled to a credit for the amount of it.

Upon these grounds we remand the case.