HYDE *vs.* STONE.

Trover will lie by a son entitled to succeed to the possession of *personal estate* on the decease of his father, where it is not shewn that administration has been granted to any one; especially where the right of the plaintiff to the property claimed has been admitted.

A guardian by *nature* is entitled to the charge only of the *person*, and not of the *personal estate* of the ward.

Trover will lie by one tenant in common against another, for the loss or destruction of personal property while in his possession.

An account stated, and an unqualified admission of liability made by a party when called on for settlement, is not within the rule that admissions made by a party during a treaty of compromise, shall not be given in evidence.

To entitle a party to the protection of the *proviso* in the statute of limitations in favor of *infants*, &c. the infancy and the bringing of the suit within the time limited after disability removed, must be specially pleaded.

*Interest* may be given by way of damages in *trover*; and where the suit is by an *infant*, the time is not limited to six years.

THIS was an action of *trover*, tried at the Chenango circuit, in December, 1829, before the Hon. SAMUEL NELSON, then one of the circuit judges.

The defendant married the mother of the plaintiff in 1808, she then being a widow, and having an only son, the plaintiff in this cause, who was born in September, 1800, and having in her possession household furniture, farming utensils, and other personal property, worth about $215, left by her former husband, G. Hyde, the father of the plaintiff; of which property the defendant, on his marriage, took possession. The mother of the plaintiff died about one year after her second marriage; the plaintiff, from the time of the marriage of his mother, lived with the defendant, and was provided for by him for the space of 2½ years, when he left the defendant. In 1814, the defendant was called upon by an agent of the guardian of the plaintiff for a settlement in relation to the property received by the defendant on his marriage; he then exhibited an *account* of the property, putting a value upon the seve-ral articles, amounting in the whole to $155,46, and charged the plaintiff with $75,46 for his board, &c. leaving a balance

of $80, which he admitted he was liable to pay, and agreed to pay, if the guardian of the plaintiff would execute to him a proper release, which was given to the agent to have executed. The release was executed and notice given to the defendant, but he did not comply with his agreement. This testimony was objected to as inadmissible, but was received by the judge. In 1824, the plaintiff demanded of the defendant two thirds of the property received by him on his marriage with the mother of the plaintiff; the defendant said he could not comply with the demand, as some of the articles had been sold, and others had been destroyed; he however produced some household furniture nearly worn out, worth little or nothing, which he offered to the plaintiff. The defendant moved for a nonsuit, which was denied. The defendant inquired of a witness *who* was the *administrator* of G. Hyde? this question was objected to by the plaintiff, on the ground that the granting of administration could not be proved by parol, and the objection was sustained. The judge charged the jury that the plaintiff was entitled to recover the value of two thirds of all the property sold, lost or destroyed, which had come to the possession of the defendant, and that they might allow interest by way of damages from the time of its destruction. The jury found a verdict for the plaintiff, finding the value of two thirds of the property sold, lost or destroyed, to be $56,87, and the damages to be $83,58, making in the whole $140,45. The suit in this case was commenced in May, 1826; the defendant pleaded the general issue and the *statute of limitations*, to which plea (as the case states) the plaintiff put in the usual replication. The defendant moved for a new trial.

*J. A. Collier*, for defendant. The plaintiff was not entitled to recover in the form of action adopted; his remedy, if any, was by bill in equity, calling on the defendant to *account*. The mother of the plaintiff, as his natural guardian, was entitled to the custody of his person and the disposition of his property, until he arrived to the age of 14, or until the appointment of a guardian; and by the marriage the rights of the mother were transferred to the second husband. 9 Cowen. 230. 3 Ba-

UTICA,
July, 1831.

Hyde
v.
Stone.

con's Abr. 413.   8 Cowen, 304.   6 Johns. R. 566, 593.   The personal property of G. Hyde, the father of the plaintiff, on his decease, went to his *administrator* and not to his *heir*. Comyn's Dig. tit. Administration, A.   If there was no administrator, it should have been shewn; here it was offered to be shewn that there was an administrator, and the testimony was refused.   If trover would lie, the action was barred by the statute; no conversion was shewn within six years before suit brought. 8 Cowen, 201.   The testimony of what transpired between the agent of the guardian and the defendant in 1814 was inadmissible; it proved admissions made during the pendency of a negotiation for a compromise; besides, those admissions would better support an action of assumpsit than an action of trover; and again, were made 12 years before suit brought. The judge erred in his charge to the jury.

*J. A. Spencer*, for plaintiff.

*By the Court*, SUTHERLAND, J.   When this case was before the court on a former occasion, 9 Cowen, 230, it was held that *trover* would lie, although it was intimated by the judge who delivered the opinion of the court, that *account* would have been the more appropriate action.   There can be no question that the *action* is well brought in point of form, and that it is sustained by the evidence.

The argument of the defendant's counsel, against this form of action, is principally founded upon the assumption, that the property in question came to the possession of the defendant as guardian or trustee for the plaintiff during his minority, and that he should therefore be called to *account* for it in a court of equity.   Now, neither the defendant, nor his wife, the mother of the plaintiff, were, as his guardian, ever entitled to the possession or control of his personal estate.   The mother was his guardian by *nature* only; she does not appear to have been appointed his guardian under the statute, and it is well settled that this species of guardianship extends only to the *person* and not to the *personal estate* of the ward.   *Genett* v. *Tallmadge*, 1 Johns. Ch. R. 3.   2 Kent's Comm. 182, were the

subject is considered by Chancellor Kent. 1 P. Wms. 285.
1 Eq. Cas. Abr. 300. Gib. Eq. Cas. 103, S. C. 2 Atk. 80.
3 Brown, 186. 3 Pick. 213. Coke Litt. 84, a. 5 Mod. 221.
Admitting, therefore, that the defendant, upon his marriage
with the mother of the plaintiff, because by force of such mar-
riage the *guardian* of the plaintiff during the life of his moth-
er, he was guardian of his person only, and had no right to
control or dispose of his personal chattels. The plaintiff and
his mother before her marriage with the defendant, were ten_
ants in common in these goods and chattles, and after such
marriage the defendant and the plaintiff stood in the same re-
lation to each other, the plaintiff owing two thirds, and
the defendant one third of the goods and chattels in question.
That trover will lie by one tenant in common against an-
other, for the loss or destruction of the chattel while in his pos-
session, is well settled, 3 Johns. R. 178, and is not controvert-
ed in this case.

The evidence establishes most satisfactorily that the de-
fendant, upon his marriage with the mother of the plaintiff, in
1808, took into his possession all the personal property left by
the plaintiff's father. The particular articles and their value
are shown, estimated at that time at $215; two thirds of
which belonged to the plaintiff, he being the only child, and
the father dying intestate. In 1824, when a demand was
made of the defendant, he admitted that most of the property
had been sold or destroyed; the remaining articles then pro-
duced by him are shown to have been of very little value,
certainly not exceeding $30. The testimony of Thomas
Whitney shows that in 1814 the defendant admitted that he
had $95 worth of the personal property then in his possession
belonging to the plaintiff; so that between 1814 and 1824 he
had sold or destroyed more than $60 worth, which exceeds
the principal sum given by the jury. I see no legal objection
to the testimony of Whitney. The declaration or admission
of the defendant does not fall within the principle, that proposi-
tions made with a view to a settlement or compromise, shall
not be used against a party.

It was admitted and proved that the plaintiff was the only
child of his father, who died intestate, and of course was enti-

tled to all his estate, both real and personal, subject only to the rights of his mother. It cannot be necessary that he should go through the form of taking out letters of administration before he can get possession of such personal estate. If administration has been granted to any other person, it was in the power of the defendant to have shown it by legal evidence; it was matter of record, and could easily have been established. But the defendant has admitted the right of the plaintiff in this case; he admitted it in 1814, and again in 1824, when he offered to give him possession of what remained of the furniture. He ought not now to object to that he is responsible only to the administrator of the estate of the plaintiff's father, and not to the plaintiff himself, who is the only person beneficially interested in that estate, it not appearing that any administration ever was granted.

In relation to the statute, the case states that the defendant pleaded the statute of limitations, to which plea the *plaintiff put in usual replication.* I understand by this the usual and proper replication in such a case, particularly as no specific objection of this kind appears to have been raised either upon this or the former trial. That it was necessary for the plaintiff to have replied specially, setting forth his infancy, and that the action was brought within six years after he attained his age, in order to entitle him to the benefit of the proviso in the statute in favor of infants, *feme coverts,* &c. 1 R. L. 186, § 5, there can be no question; it is settled upon anthority, and by all the precedents. *Chandler* v. *Vilett,* 2 Saund. 117, F. to 121, b. 2 Chitty's Pl. 607. 3 Went. Pl. 205. 1 Wils. 134. It must be so upon principle; upon the simple issue that the defendant was guilty, &c. within six years, the plaintiff in a case like this must inevitably fail; he must spread upon the record enough to show that he was protected by the proviso in the statute, and that it therefore did not run against him. The pleadings not being before us, we are bound to intend from the statement in the case that such was the replication in this case.

The plaintiff was entitled to *interest,* by way of damages, from the time of the converson; he was not affected by the

statute, and his right to interest of course was not restricted to six years.　There was no error in the charge or decisions of the judge, and the verdict is fully sustained by the evidence.

UTICA.<br>July, 1831.<br>Roy<br>v.<br>Targee.

Motion for new trial denied.

---

Roy vs. Targee and others, commissioners of the alms-house of New-York.

On an *appeal* to the sessions from an *order of bastardy*, the appellant is not entitled to a *trial by jury*.

The order of a court of sessions, confirming an order of bastardy of two justices directing the payment of *lying-in expenses*, will not be reversed on the ground that no evidence of such expenses was given in the sessions, if no objection to the confirmation of the order on that ground was taken in the sessions; the proof will be deemed as waived.

A court in the exercise of a sound discretion may require counsel to state the substance of evidence offered to be given, so as to enable them to judge of its materiality and relevancy, and a court of review will not control an inferior tribunal in the exercise of such discretion.

The *lying-in* expenses and the *costs* of the order and appeal may be enforced by attachment, where the bond of indemnity executed by the appellant under the order of the sessions provides only against *future* expenses.

Certiorari to general sessions of New-York.　An order of filiation was made by two special justices of New-York, adjudging Roy to be the father of a bastard child, and he appealed to the sessions.　At the July term, 1828, of that court, the parties appeared, and the hearing of the appeal was postponed by consent until the August term; on the first day of which term the parties again appeared, and the cause was set down for hearing on *Friday* of the first week of the term, when the appellant asked to have the appeal tried by a *jury* which was refused by the court.　Jane Anderson, the mother of the child, was then examined as a witness.　The whole day was spent in her examination and cross-examination, and the further hearing was postponed until the next day, when the appellant applied for an attachment against a witness, without producing proof that she had been subpœnaed, which motion was re-