## TYLER *vs.* TAYLOR.

An assignment of a mortgage, absolute in its terms, can not be contradicted by parol evidence showing that it was given and executed with the intention of merely *discharging* the mortgage from the lien which the assignors had on the property mentioned therein.

The principle authorizing *strangers* to give parol evidence for the purpose of varying the terms of an instrument, can not be applied to such a case, without also offering to show that the assignment was, by fraud, made to read differently from the actual agreement between the parties, to accomplish some covert purpose.

Where a mortgage of personal property is given to several persons, to secure the payment of several debts owing by the mortgagor, and by the express terms of the instrument the whole is to become forfeited by a single default, when a default occurs, in the payment of either of the debts, the property becomes forfeited to the holders of the mortgage, jointly, and they become tenants in common of the whole property. And neither of the mortgagees, upon his debt becoming due, has any *sole* and *several* right to the mortgaged property, which will authorize him to appropriate it to his own use.

One of several tenants in common of personal property, has no right to *sell* the property. He can only sell his interest in the property.

If he undertakes to sell the entire property, he is liable to an action of trover, at the suit of his co-tenants; or they may take the property from the possession of the purchaser.

But unless there be a destruction or sale of the property, one tenant in common can not bring trover against his co-tenant for dispossessing him.

THIS was an action of trover for a horse. The cause was tried at the Oswego circuit, in June, 1849, before Justice MASON. The jury, under the direction of the court, found a verdict for the defendant; and the plaintiff, upon a case, moved for a new trial.

*D. H. Marsh,* for the plaintiff.

*Le Roy Morgan,* for the defendant.

*By the Court,* GRIDLEY, J. The plaintiff purchased the horse, which is the subject of this suit, of one Jonathan Sher-

wood, for $60; receiving him in payment of a debt of $30, which was due from Sherwood, and giving credit for the remaining $30 to Sherwood, on account, as Sherwood himself testifies. He therefore got all the right, and no more, which Sherwood possessed. Sherwood's right was that of one of several mortgagees, to whom the horse, with numerous other articles of property, were conveyed by mortgage, conditioned *to pay* $30 *to Sherwood;* and *to pay up and "discharge"* several other notes, for large sums, on which the other mortgagees, Dan Tredway, Bradley Higgins, David Sloan, and Robert A. Stitt, were liable as sureties; and to save those individuals harmless from all costs, &c. Now at the time when Jonathan Sherwood took the horse from the possession of one Wait, the owner, (who allowed G. A. Sherwood, the mortgagor in the said mortgage, to mortgage this horse,) the $30 was *due;* and so also was a note for $200, owned by Allen & Taylor, on which Bradley Higgins and R. A. Stitt were indorsers, together with several other notes, which the mortgage was conditioned to pay.

After Jonathan Sherwood had taken this horse from the owner's possession, as forfeited, and sold him to the plaintiff, the defendant, (one of the firm of Allen & Taylor,) to whom Dan Tredway, Bradley Higgins and David Sloan had assigned their interest in the mortgage, took the horse from the possession of the plaintiff; and for this taking the action was brought. It was upon an offer to contradict this assignment, by parol, that the plaintiff takes his first exception.

I. After the introduction of the assignment of the mortgage in evidence, the plaintiff offered to show that the assignment was given and executed merely to discharge the mortgage from the lien which the assignors had on the property mentioned in it. This was objected to, and overruled by the court. The assignment purports to convey to Allen & Taylor all the rights the assignors had in the property, except a carding machine. and fixtures, and authorizes the assignees to do what the assignors might do if the assignment had not been made. The offer was, therefore, to contradict every word of the instrument, and totally change its legal character. The question is, can

this be done ?   It is argued that it *may* be done by *strangers*, under the authority of the cases cited in Cowen & Hill's Notes, vol, 2, p. 1436.   (*Id. 3d ed. p.* 578.)   I apprehend that the principle of those cases can not be applied to this, without also offering to show that the assignment was, by fraud, made to read differently from the actual agreement between the parties, to accomplish some covert purpose.   It can not be that when I have purchased a mortgage, and the assignment expresses the contract of purchase, it may be shown by parol that the assignment was merely intended to discharge the mortgage, without showing some other facts than the mere error in the assignment, and without any offer to show that the error was fraudulent.   Such a doctrine would be alarming, and would leave the holders of such securities at the mercy of their debtors.   In this case the offer was not made by the plaintiff claiming to be a *stranger ;* nor was there any thing but a naked offer made to turn an assignment of a mortgage into a mere *release.*   We are clearly of the opinion that the justice was right in excluding this evidence.

II.  The next question is, what were the legal rights of the respective parties?   Jonathan Sherwood had a debt of $30, which was due ;  and Allen & Taylor had a debt of $200, which was also due.   And by the express terms of the instrument the whole was forfeited by a single default.   The property therefore was *forfeited* to the holders of the mortgage, jointly, and they became tenants in common of the whole property.   They probably did not, as between themselves and their co-mortgagees, become entitled to the horse as *absolute owners.*   That question, however, does not necessarily arise here.   But it is enough to say that Jonathan Sherwood had no *sole and several* right to the horse, authorizing him to appropriate it to his own use for the $30 due him.   Taylor (of the firm of Allen & Taylor) certainly had an equal right to him.   The most that can be claimed by Sherwood is, that he is a co-tenant with Allen & Taylor and the other mortgagees.   Being such co-tenant he had no right to sell the horse to the plaintiff.   (*White* v. *Osborn,* 21 *Wend.* 76.) . Owning only an interest as a tenant in

common, he could sell only such interest as he had in the animal. Sherwood was liable to an action of trover, at the suit of his co-tenants; (21 *Wend.* 72;) or they might take the animal from the possession of the purchaser; he being tenant in common with them. (*Hyde* v. *Stone*, 9 *Cowen*, 230, 7 *Wend.* 354. *Mersereau* v. *Norton*, 15 *John.* 179.) The plaintiff being a tenant in common with Allen & Taylor, can not maintain trover against Taylor for dispossessing him. (*Farr* v. *Smith*, 9 *Wend.* 338. *Hyde* v. *Stone*, 9 *Cowen*, 230. *Wilson* v. *Reed*, 3 *John.* 175. *Mersereau* v. *Norton*, 15 *Id.* 181.) This disposes of the case as the justice disposed of it on the trial. A new trial is therefore denied, with costs.

---

SAME TERM. *Before the same Justices.*