## JULIA A. KING v. ERASTUS B. PHILLIPS.

### (GENERAL TERM, FIFTH DISTRICT, OCTOBER, 1868.)

The trustees of a school-district may acquire an interest in land as tenants in common with others.

The trustees of a school-district, built a school-house upon certain premises, and afterward the legislature legalized the site, and authorized the trustees to acquire title thereto, and they thereupon purchased an undivided interest in the premises occupied.—*Held*, the trustees were tenants in common with the other owners.

Whether the legislature has constitutional power to authorize the taking of land for school purposes.  *Quere.*

The trustees of a school-district, having possession of a school-house and being tenants in common with the plaintiff and others, of the lot upon which it stood, the plaintiff, while said trustees were absent, the premises locked, the keys in their possession, and the property of the district within, entered through a window and fastened the door against their entrance, and remained in possession; the trustees broke down the door and ejected her, ' whereupon she brought this suit to recover damages for the forcible entry, &c.—*Held*,

That the trustees were justified in ejecting the plaintiff, and the action would not lie.

That the trustees having taken possession of the *locus in quo*, and being in the occupancy thereof, at the time of plaintiff's entry, their occupancy was good as against their co-tenants.

That the possession of the plaintiff was inconsistent with a user of the property by the trustees; and her entry being made with the purpose to exclude, and followed by an exclusion of the trustees, such entry and occupation were unlawful.

That the trustees, having been for sometime in possession, with the acquiescence of the tenants in common, a license would be presumed in favor of their occupancy, and the plaintiff's remedy for possession, if any, was by action.

It seems, an action may be maintained for the trespass by one tenant in common against another, who, being in possession, is put out of the same by such co-tenant.

The decisions respecting the rights of tenants in common to hold and occupy the common property, as against their co-tenants, classified, and the rights of such tenants in each class stated.  Per MULLIN, J.

THIS action was brought by the plaintiff to recover damages for forcibly entering into a school-house, in the town and

county of Onondaga, in May, 1867, of which she was in the possession, and ejecting her therefrom.

The school-house was the property of the trustees of school-district No. 6, in said town of Onondaga, and was erected and standing, at the time of the alleged illegal entry, on a part of the public square in said town, in which the plaintiff and defendant were interested as tenants in common. The manner in which the several parties acquired an interest in the square, was as follows :

In November, 1803, and prior thereto, George Hall and Thaddeus M. Wood were owners in fee of a certain lot of land, in the town of Onondaga, containing some six or eight acres, which had been surveyed and laid down upon a map of the village, as and for a public square.

In order to induce the supervisors of the said county of Onondaga to locate in said village the court-house, and other public buildings for the use of the county, Hall and Wood proposed to the supervisors to convey said tract of land to said county, on the condition that they would erect thereon such buildings, and that the same should be the property of said county so long as it should be used for such purposes, and when the county ceased to use said premises for such purpose, the title should revert to the said grantors.

The supervisors accepted the offer upon the conditions aforesaid, and the said Wood and Hall did, thereupon and on the 2d November, 1803, convey said premises to said county, by deed, upon the conditions above mentioned, and the supervisors erected on said premises a court-house and other buildings, and continued to occupy the same until the removal of the county seat to the village of Syracuse, more than thirty years before this action.

From that time, the supervisors had not occupied the said premises. On the 2d December, 1864, the board of supervisors of said county, by a regulation duly passed, at a meeting thereof, declared that it made no claim to said premises, by virtue of the grant aforesaid.

The above named grantor, Wood, died, in 1826, and his

King *v.* Phillips.

wife in 1854, leaving seven children, of whom the plaintiff was one.

The plaintiff was the owner, as the heir of her father, and as purchaser from others of said heirs of five thirty-second parts of said premises.

George Hall, as one of the heirs of George Hall, one of the original grantors to the county, was owner of one undivided eighth part of said premises.

At some time prior to the 1st April, 1867, a school-house was erected on said premises, so as aforesaid conveyed to the board of supervisors, but at what time did not appear. It was occupied as such down to the time of the entry of the plaintiff, as hereinafter mentioned, and subsequently thereto.

In 1865, or 1866, the plaintiff commenced an action of ejectment against the trustees of said district No. 6, to recover her undivided share or interest in the said premises; and such proceedings were had in said action that, on the 1st day of June, 1866, judgment was recovered by her adjudging her entitled to five thirty-second parts of a portion thereof, viz. : of that portion which the school-district occupied. It did not appear that any writ of possession was ever issued or executed.

At a meeting of the inhabitants of said school district No. 6, held on the 18th August, 1866, a resolution was passed abandoning the public common (which meant the premises in controversy in this suit), as a school-house site.

On the 16th April, 1867, an act was passed by the legislature, entitled : "An act to legalize the site of the school-house in school district No. 6, of the town of Onondaga, and to enable the trustees of said district to acquire the title to the lands now used for such site, and such other lands as may be necessary for the same."

The first section of said act legalized the location of said school-house on the public square.

The second section empowered the trustees to acquire title to the land on which it stood, and such other lands as might

be necessary, in the manner prescribed in chapter 800 of the Laws of 1866.

George Hall and wife executed and delivered to the trustees of said school-district a deed of the land described in the deed of his father and Wood, to the supervisors.

This deed purported to bear date the 1st May, 1867, and expressed a consideration of $200, and was recorded the 7th May, 1867.

On the 6th May, 1867, at a meeting of the inhabitants of said school-district, a resolution was adopted authorizing the trustees to purchase the interest of said Hall, in said premises, for the school-house site, for the sum of $200.

There had been, it would seem, an understanding between the plaintiff and the trustees that they would surrender to the plaintiff possession of the school-house and premises if they did not, before that time, acquire title thereto. This was not done; and on the 10th May, 1867, the plaintiff demanded possession of the said premises, and it was refused on the ground that they had acquired title thereto from Hall, and the location of the school-house on the public square was legalized by the legislature.

On the morning of the 13th May, 1867, the plaintiff, in behalf of herself and the other heirs of Thaddeus M. Wood, went to the school-house about four o'clock, and finding it locked, raised a window, passed through, and changed the locks so that they could be locked on the inside, but not unlocked on the outside, and continued in possession during the day.

In the school-house, at this time, were books, &c., belonging to the scholars, and property belonging to the district.

During the day of the 13th, a meeting of some of the male residents of the district was held, and it was concluded to take possession of the school-house forcibly, if necessary, and remove the plaintiff therefrom.

The defendant and his co-trustees were selected as the persons to enter and put out the plaintiff that night, and they accordingly went to the school-house, broke it open, entered,

King v. Phillips.

and put out the plaintiff, using no more force than was necessary to accomplish the object.

For this forcible entry and putting out, this action was brought.

It was tried at the Onondaga Circuit in February, 1868. The plaintiff was nonsuited. The motion to set aside the nonsuit and for a new trial was ordered to be heard in the first instance, at the General Term, and, in the meantime, judgment was suspended.

*S. D. Dillaye*, for the plaintiff.

*W. H. Gifford*, for the defendant.

Present—BACON, FOSTER, MULLIN and MORGAN, JJ.

By the Court—MULLIN, J. It will be seen from the foregoing statement of the facts of the case, that while the plaintiff, in her action of ejectment against the trustees, claimed to recover an undivided interest in the public square, she in fact recovered an interest in that portion of it only occupied by the trustees, which was a strip some 110 feet long by forty-one feet wide; and it was into that part she entered and from which she was ejected.

It is not established by the judgment in the ejectment suit that plaintiff has title to any part of the public square, except the school-house lot.

The defendant establishes a title to an undivided interest in the whole square.

The plaintiff and the trustees are tenants in common of the school-house lot if the trustees can legally take an interest merely, in land on which to erect a school-house, instead of a perfect legal title.

By 2 R. S., 5th ed., 109, § 100, the inhabitants of a district, when lawfully assembled at a district meeting, have power to designate a site for a school-house, and to lay a tax to purchase or lease a suitable site for a school-house, and to build, hire or purchase such school-house.

The superintendent of public instruction is clothed with the power of supervising the action of district meetings and of the trustees of districts, and he has from time to time laid down regulations for their government, which have, to a certain extent, the force of law.

The courts are not bound by his decisions, but they are treated with the highest respect, and, unless clearly erroneous, are followed.

Amongst other rules laid down by the superintendent is this, that money raised by tax cannot be applied to the purchase of land for a school-house until a valid title is obtained. (See Code of Public Instruction, published in 1856, p. 54.)

At page thirty-two of the same work it is decided, that a district will not be permitted to acquire a site for a school-house by perpetual lease.

At page 223 it is said, there can be no partnership in the erection of a school-house, which will prevent the district from controlling it entirely for the purposes of a district-school; and that a tax cannot be raised for building a house for the joint use of a church and school-house, or even an academy and school. But a building may be erected by a district, jointly with a church coporation, or person, provided the entrances to the apartments for the use of each is from the outside, and not through the other. (See cases collected from the Massachusetts and Connecticut reports on pages 223, 224.)

There is nothing in the law, or the directions of the superintendent, or the decisions of our courts, prohibiting the trustees of a school district from acquiring an interest in real estate as tenants in common with others.

If the land held in common is sufficient in quantity, and the interest of the district is large enough to justify the belief that in the partition, land sufficient for the use of a school-house will fall to the share of the district, or the co-tenants will permit the district to use a portion for the pur poses of a school-house, there is no reason why it may not acquire such an interest.

King v. Phillips.

But if it were illegal, the act of April, 1867 made it legal, and clothed the district with the rights of a tenant in common.

It is not necessary for the purposes of this case, to inquire whether the legislature has the power to authorize a school-district to acquire title to a site for a school-house, against the consent of the owner, as being .taken for the benefit of the public. No such title has been acquired by this district, or attempted to be acquired by the trustees.

And while it may be the law, that the act authorizing the taking of private property for public use is constitutional, when it provides for making compensation by tax, without actually paying down the damages before there can be a right of entry, yet it is at least necessary that the party authorized to take, should have instituted proceedings for the purpose of taking, and designated the property proposed to be taken.

It has never been held, that because the general railroad act authorizes the taking of property for the use of a railroad, that a company can construct its road over my land, and operate without taking any steps to acquire title to it.

The trustees, although authorized to acquire title to the school-house lot, could not occupy forever without taking steps to perfect their title. The owners of the land had the right to eject them, unless they got title to the school-house lot, and paid the damages resulting from the taking.

I apprehend, that before the passage of the act of 1866, (chapter 800, of the Laws of that year), it was not understood by the profession, that land could be taken for sites for school-houses without the consent of the owner.

The superintendent of public instruction so understood the law, as he says in the Code cited (*supra*, p. 221): " It is greatly to be preferred, that the district should obtain an indefeasible estate in fee simple; but inasmuch, as there is no compulsory process provided by the laws of this State, by which the title to land for school purposes can be transferred when the owner is unwilling, etc., etc."

The question is still an open one, whether the legislature has the power to authorize the taking of land for school purposes under the constitution.

I have said that the act of 1867 made the trustees tenants in common with the plaintiff, if it should be held, that before that statute the district could not acquire a partial title to the site of its school-house. I say this, because if the erection of the school-house on the public square, without acquiring a title to the land was illegal, the owners could, of course, instantly enter and eject the trustees.

But when the location was made valid, then the district had the same rights an individual would have under like circumstances.

If an individual had erected a building on the square and had occupied for a number of years, he would be deemed lawfully in possession as tenant to the true owners if he had no higher interest. If after such a continued occupancy he should acquire a title to an undivided share of said square, then he would be lawfully in possession as tenant in common with the rest of the owners.

It may not be correct, therefore, to say that the statute of 1867 made the trustees tenants in common; but making the location of the school-house lawful upon a site not owned, and authorizing them to acquire title by adverse proceedings, it was surely competent for them to agree with the owners to buy in their shares, and thus acquire a complete title as soon as all the owners conveyed all their separate interests.

On acquiring the interest of Hall therefor, they became tenants in common with the plaintiff in the school-house lot.

Being tenants in common, the first question is, whether plaintiff could legally enter into the school-house and hold the trustees out.

The possession of one tenant in common of either real or personal property is the possession of the others. (1 Greenleaf's Cruise, 872; 4 Kent, 370.)

Hence one cannot maintain an action against another for merely keeping possession from him. If one attempts by

King *v.* Phillips.

force, the one having the possession may defend it by such force as is necessary to its protection.

It must necessarily follow that there cannot be a right to take by force and a right by force to resist the taking existing in different persons at the same time.

Hence it is in the case of personal property, that one tenant in common cannot take it from his co-tenant by force, yet if he can get possession without a resort to force, then he can hold it and protect his possession by force. (Coke on Litt., 199 *b.*)

When personal property is indivisible, and for that reason cannot be partitioned, there is no way in which one of several owners can have the use of such property if the other being in possession refuses to surrender it. (*Hyde* v. *Stone*, 9 Cow., 230 ; same, 7 Wend., 354 ; 3 Kern., 173 ; *Gilbert* v. *Dickerson*, 7 Wend., 449 ; 9 Wend., 338 ; 2 J. R., 468.)

Real estate is governed by different rules.

If one tenant in common takes possession of the entire property and keeps his co-tenant out, the latter may resort to his action of ejectment, establish his title, and be put into possession with his co-tenant. Having done this he may apply for a partition of the estate, and thus be put into actual possession of his share; or if a partition is not practicable, then it can be sold and the proceeds divided.

It is the right of a co-tenant to enter upon any part of the land unoccupied by the others and keep possession until actual partition.

But can he enter upon that part actually in the possession of his co-tenant either by force or when the latter is temporarily absent without any intention of abandoning the possession. (Comyn's Dig, Estates, K. 8.)

There is such a conflict of opinion on this question that it would be of no service to enter into an examination of the cases. Most of them may be reconciled by attending to different states of facts on which the adjudications were made.

They may be divided into several classes.

The first includes those in which the property owned in

common is such as to admit of joint occupancy without unreasonable interference with the rights of each other.

The second includes those cases in which there cannot be a joint occupancy consistent with the rights of either.

The third includes those in which there has been an occupancy of part by one, with the assent express or implied of the others.

In cases within the first class, each has a perfect right to enter and occupy, and the entry does not give a right of action to his co-tenants, unless the latter is ousted, or his property is put off the land. (*Mumford* v. *Brown*, 1 Wend., 52.)

In cases within the second class, one tenant in common cannot enter and occupy, with or without force, so long as his co-tenant is in the actual possession. (*Erwin* v. *Olmsted*, 7 Cow., 229.) While the right of entry may be said to exist in this case, as fully as in the other, the law, in order to prevent violence or disorder, requires that the right shall be enforced in a legal and peaceable manner. Hence, it gives the right to the one in the actual possession to defend it by force.

In cases within the third class, the tenant in possession will hold it until the right to occupy is terminated in a legal manner; and when that is done, the right of the other tenant to enter will depend on whether the case is brought within the first or the second of the classes above mentioned. (4 Kent, 370.)

As I shall have occasion, in the discussion of another question in the case, to refer to authorities, I will not employ time in alluding to them here.

The plaintiff, on the trial, established title to the school-house only. The question, therefore, is not here, whether she could lawfully enter on any other part of the public square. It is whether she had the right to enter the school-house, of which the trustees had, for several years, the exclusive possession, and of which they were at the time in the actual possession, having the key of it in their custody, and property belonging to the district within the building.

Possession by the plaintiff (because entry, without occupancy, would be of no value to her), would be inconsistent with user by the trustees for the purposes of a school-house,

and, therefore, in my opinion, she did not have a right of entry and occupancy.

I do not think that mere entry by one tenant in common, upon the common property, is *per se* unlawful. It only becomes so when it is made with the intention of excluding his co-tenant, and, upon entry, he excludes him.

I am also of the opinion, that we must assume, in this case, after so long an acquiescence in the exclusive occupancy of the school-house lot by the trustees, with the knowledge of the heirs of Wood and Hall, that a license was given for such occupancy, and the plaintiff could not thereafter enter and occupy with the trustees without their assent. Her remedy was by action, and not by force or artifice.

I come now to the question whether, if one tenant in common, enters upon the property held in common, an action of trespass will lie for such entry.

If one tenant in common puts out of possession his co-tenant, or prevents him from entering, when an entry would be lawful, it is well settled that ejectment lies. (Coke's Lit., 199 b. 200 ; Comyn's Dig., Title Estates, k. 8 ; 1 Chitty's Pl., 180.)

So he could, at common law, have trespass for the mesne profits. (*Goodtitle* v. *Tombs*, 3 Wils, 168.)

It would seem to be a logical inference from these propositions, that if these forms of actions can be maintained in these cases, trespass may be maintained in any other case when one joint tenant is unlawfully put out of possession of the joint property by another.

Chitty, at the page cited, *supra*, says : " If one tenant in common, disturb the other in possession, trespass, *quare clausum fregit*, may be supported ; and though trespass does not lie against a tenant in common for taking the whole profits, yet if he drive out of the land any of the cattle of the other tenant, or hinder him from entering or occupying the land, an action of trespass, *quare clausum fregit*, or an ejectment may be supported.

It was held in *Murray* v. *Hall* (62 Eng., C. L., 439), that

King *v.* Phillips.

trespass lies by one of several tenants in common, against his co-tenant, when there has been an actual expulsion.

The Supreme Court of Massachusetts in *Keay* v. *Goodwin* (16 Mass., 1), held that if one of several tenants in common occupy separate parts of the common property, trespass will lie by the one against the others who remove the personal property of the former therefrom against his will.

The action was brought for breaking and entering plaintiff's close, and carrying away his boards.

Defendant pleaded that the *locus in quo* was the property of himself and several other persons, tenants in common; that his co-tenants had consented to his use of it for piling boards upon until the plaintiff entered and himself occupied it for piling boards upon; and that defendant entered and removed plaintiff's boards, as he ·lawfully might. The plaintiff replied that the *locus in quo* had been assigned by the co-tenants to ·one Wise, one of their number, as a piling place, and that he (plaintiff) entered and occupied as Wise's tenant.

The defendant admitted that Wise was one of the co-tenants, and alleged, that before the supposed trespass, he conveyed his interest to Littlefield and Prim. Plaintiff admitted the conveyance, but alleged, by way of rejoinder, that they never entered. There was a surrejoinder and demurrer.

WILDE, J., delivering the opinion of the court, says: "Wise had a good right to occupy the *locus in quo*, and independently of the agreement for the separate occupation, the defendant had no right to disturb him in his possession."

It will be perceived that the property was capable of occupancy by several of the tenants, and the right of one to appropriate a part, without any authority from his co-tenant, and to retain it without interference from any of his co-tenants, is distinctly asserted.

The learned judge proceeds as follows: "If there be two tenants in common of a dwelling-house, and they severally furnish and occupy different apartments, one co-tenant has no

right to disturb the other's occupation by removing his furni
ture, and trespass would clearly lie for such removal."

Such an arrangement would operate *pro tempore* as a parti·
tion of the property, and, after that, each would have the right
to occupy his portion without interference from his co-tenant,
and the case would be within the third class above men-
tioned.

The judge then says: "We therefore apprehend it to be
·very clear that the plaintiff, as tenant at will of Wise, had
good right to enter and pile his boards in the place allotted to
him for that purpose, and that without such allottment he had
as good a right as the other tenants in common thus to occupy,
and they had no right to remove his boards or expel him from
the possession."

That is to say, when one tenant is lawfully in possession, he
cannot be driven out by another, having no better right to
the possession than himself. The ground of action in such
case is the expulsion, and not the entry.

In a subsequent clause of the opinion, this view of the rights
of the parties is repeated; the judge says: "The defendant,
in the case before us, had no right to oust the plaintiff, nor had
any one such a right except Littlefield or Prime (the grantors of
the co-tenant who admitted plaintiff to possession); and
although no action lies against the defendant, he being one of
the tenants in common, for breaking and entering the close,
or for any injury done to the common property, yet the
removal of the plaintiff's boards was a trespass for which this
action well lies."

The mere entry is lawful, but any interference with the
rights of another tenant subjects him to an action.

With great deference to the opinion of the learned judge, I
think he is mistaken when he says one tenant in common is
not liable to his co-tenant for an injury to the common prop-
erty. He is liable for the destruction of personal and for
waste committed on real estate held in common. (Coke on
Lit., 199 (b.); 2 R. S., 334, § 3; same, 335, § 11; 8 Term
R., 145; Comyn's Dig., Title Estates, K. 8; *Maddox* v.

*Goddard*, 3 Shep., 218; *Odiorne* v. *Lyford*, 9 N. Hamp., 502.)

SAVAGE, J., in *Erwin* v. *Olmsted* (7 Cow., 229), said that one tenant in common has no right to enter and oust his co-tenant from possession. If he does, trespass *quare clausum fregit* lies.

This question was not necessarily up for decision, but it is entitled to great respect as the opinion of a distinguished judge.

He does not hold an entry alone the ground of the action, but it is the entry and ouster that constitutes the trespass. (*McGarrel* v. *Murphy*, 1 Hilt., 132.)

WELLS, J., in *Van Orman* v. *Phelps* (9 Barb., 500) says: If Land was tenant in common with the plaintiff of the premises in question, he had the same right to take the hay (which grew on the common property) as the plaintiff, and if the defendants, in taking the hay, acted under the directions of Land, trespass will not lie against them. In other words, one tenant in common is not liable in trespass to his co-tenant, for appropriating to his own use the products of the common property. But this has no bearing on the question, as to the liability for entering and ousting a co-tenant. It is only another application of the rules applicable to personal property, owned by several in common, as to which, taking the exclusive possession by one, does not give a right of action to another tenant in common.

In *Duncan* v. *Sylvester* (11 Shep., 482), an action on the case was held to lie by one tenant in common of a salmon fishery, against another who excluded him from sharing in it.

In *Booth* v. *Adams* (11 Vt., 156) it is held, that one tenant in common cannot maintain trespass against his co-tenant, unless he is expelled from, or hindered in the enjoyment of the common property.

It is laid down in Bacon's Abridgment, Title Joint Tenants, and Tenants in Common, that:

One tenant in common may offend against the statute against forcible entries and detainers, either by forcibly eject-

King *v.* Phillips.

ing, or forcibly holding out his companions; for though the entry of such a tenant be lawful *per my et per tout*, so that he cannot in any case be punished in an action of trespass at common law, yet the lawfulness of his entry, in no way excuses the violence, or lessens the injury done to his companion, and consequently an indictment of forcible entry into a moiety of a manor is good.

If this is the law, the entry of one tenant in common upon his co-tenant, peaceably in possession, is unlawful. Being unlawful, it is of very little consequence what remedy is given for punishing the wrong doer.

There are a few cases, in which it would seem to have been held, that trespass *quare clausum* would not lie by one tenant in common against another; but as I have not access to the books, I am unable to say whether they assume to overrule the cases to which I have referred, or whether they turn on some peculiar state of facts, or upon local legislation. I think, upon principle, as well as upon authority, an action of trespass *quare clausum* may be maintained by one tenant in common against another, when being in possession he is put out of possession by such co-tenant.

Assuming that trespass will lie in favor of one tenant against another, it remains to inquire whether what was done by the defendant, was such a tortious act as made him liable as trespasser.

The mere entry by either was lawful; and for it neither can maintain an action against the other. (*Allen* v. *Carter* 8 Pick., 175 and 177.)

The defendants were, at the time of the entry of plaintiff, and of their entry upon her, and for several years previous, had been in the possession of the school-house and lot, with the acquiescence, if not direct assent of the plaintiff.

This entitled them to the exclusive possession, and the plaintiff could not lawfully enter, and occupy the school-house with the trustees. And being in possession they had the right to remove the plaintiff, leaving her to remedy by partition, to obtain her portion of the property.

If I am right in these views of the law, the plaintiff was rightfully nonsuited.

Motion for a new trial should therefore be denied, and judgment ordered for defendant.

All the judges concurring, the motion for a new trial is denied.

New trial denied.