HAWLEY and three others *vs.* KEELER and thirty-two others.

The defendants were patrons of a cheese factory, owned by T., under an arrangement by which each one was to take the milk from his cows to the factory as long and in such quantities as he pleased, and could have as much of the cheese that was manufactured at the factory as his milk made, paying T. one cent per pound for making the cheese; or he could have his cheese sold with the rest of the cheese that was made at the factory, and receive the money for his cheese. The milk that each person took to the factory was mixed together, credited to him, and made into cheese; each having an interest in the cheese made, in proportion to the quantity of milk he furnished. The cheese was not divided, but the same was sold from time to time for the patrons. *Held* that the defendants were not partners, but were tenants in common of the cheese.

*Held, also,* that there was nothing joint on the part of any defendant, to make him liable for anything any other patron did, unless he consented to a sale of his part of the cheese with that of other patrons.

*Held, further,* that when all the defendants consented that a committee of three, appointed for that purpose, should sell the whole of the cheese belonging to all, they became jointly liable to perform any valid contract their committee made, for the sale of the cheese.

And that a contract of sale, made by two members of such committee and assented to, substantially, by the third, was binding upon the defendants.

Where vendors refuse to deliver to the purchasers the property sold, and sell the same to other persons, this renders it unnecessary for the purchasers to offer to pay the unpaid portion of the purchase price, before suing for damages.

THIS action was tried at the Cortland circuit, in April 1870, when the jury rendered a verdict in favor of the plaintiffs for $1730 damages. The defendants made a motion, at a special term, for a new trial, upon a case and exceptions; which motion was denied, and the defendants appealed to the general term of this court.

The action was brought for an alleged breach of a contract, by which the plaintiffs claimed the defendants, on or about the 2d day of November, 1868, agreed to sell and deliver to the plaintiffs, in the county of Cortland, a large quantity of cheese, owned by the defendants, at and for the price of sixteen and three eighths cents per pound. The complaint alleged that the plaintiffs paid $1000 on the

contract, at the time it was made; and that the defendants refused to deliver the cheese to the plaintiffs, but sold the same to other persons for sixteen and a half cents per pound.

The case was submitted to the court on briefs

*Duell & Foster*, for the plaintiffs.

*A. P. Smith*, for the defendant Morse.

*By the Court*, BALCOM, J. In the year 1868, the thirty-three defendants were patrons of the Cuyler Cheese Factory, in Cortland county; which factory was owned by one Thompson. Each patron was to take his milk from his cows to the factory, as long and in such quantities as he pleased, and could have as much of the cheese that was manufactured at the factory as his milk made, paying Thompson one cent per pound for making the cheese; or he could have his cheese sold with the rest of the cheese that was made at the factory, and receive the money for his cheese.

The milk that each patron took to the factory was weighed or measured, and an account was kept of the quantity; and all the milk of each patron was mixed together and made into cheese—each having an interest in the cheese made, in proportion to the quantity of milk he furnished. The cheese was not divided, but the same was sold from time to time for the patrons.

At or near the commencement of the cheese making season, the patrons appointed a committee of three persons to make sales of the cheese. Two of the committee were the defendants Keeler and Morse. The other member of the committee was William Bogardus, who was not a patron of the factory, and had no interest in the cheese. He acted on the committee but little, if at all, until after the time the plaintiffs had made the contract for the pur-

Hawley *v.* Keeler.

chase of the cheese the defendants had on hand, about the 2d day of November, 1868.

The judge charged the jury that the defendants were not partners in the cheese. But the plaintiffs' counsel now insist that the defendants were partners in the cheese. If they were partners, that would relieve the case of one question, as to whether a valid contract was made for the sale of the cheese in question by the defendants to the plaintiffs.

I am of the opinion that the judge correctly charged the jury that the defendants were not partners. They were not jointly liable to Thompson for making the cheese. Each defendant was only liable, separately, to pay Thompson one cent for every pound of cheese his milk made. He could stop taking his milk to the factory any day he saw fit. He could ask for a division of the cheese and have his share set apart to him, that his milk made, or in proportion to the quantity of milk he furnished. There was nothing joint on the part of any defendant to make him liable for anything any other patron did, unless he consented to a sale of his part of the cheese with the cheese of all, or some of the other patrons of the factory. But when all the defendants consented that a committee should sell the whole of the cheese, belonging to all of them, all of the defendants became jointly liable to perform any valid contract their committee made for the sale of the cheese. But the defendants were not partners. They were tenants in common of the cheese—and one or more of them could sell their interest, only, therein without the consent of the other defendants. Though a sale and delivery of all the cheese by one or more of the defendants, without the consent of the others, would have rendered those making such sale liable to their co-tenants in common, for converting the cheese. (*See* 3 *John.* 175 ; 7 *Wend.* 354 ; 21 *id.* 72 ; 9 *id.* 338 ; 2 *Hill,* 47 ; 22 *Maine R.* 287.)

The judge charged the jury to the effect, that two of the defendants' committee, under the facts and circumstances of the case, were authorized to make the alleged contract for the sale of the cheese in question to the plaintiffs; that if the jury should find that two of the committee concurred in making such contract, the defendants were bound by it. To which portion of the charge the defendants' counsel excepted. The facts and circumstances of the case, to which it is probable the judge alluded, were that one of the committee, Bogardus, was not a patron of the factory, and had no interest in the cheese; that he had not acted or been consulted when several sales of cheese had been made by the other two members of the committee, before the alleged contract in question was made; that he must have known the other members of the committee were making those sales, and did not object; that the first act he did, respecting the alleged contract in question, was to sign a letter, with one of the other members of the committee, (Wheeler,) dated some four days after the making of such alleged contract, and directed to one of the plaintiffs, in which he and Wheeler said: "In regard to *our cheese trade*, after seeing the rest of the committee and some of the patrons, they think they cannot wait for their pay, and if you want the cheese you must make arrangements to pay down. They think it is too late in the season to give credit, as they need the money." The evidence was found sufficient by the jury to justify the conclusion that Keeler and Morse, two members of the committee, made the contract in question, as the plaintiffs alleged it was. And the above mentioned letter recognized such contract in every way, except as to the defendants' waiting a short time for their pay for the cheese, over and above the $1000 the plaintiffs had deposited in Barber's Bank, to Wheeler's credit, to apply on the contract. The defendants and all three of the committee must have resided near the factory. They ac-

Hawley *v.* Keeler.

quiesced in all previous sales of the cheese at the factory, and they undoubtedly knew what two of the committee were doing respecting the contract in question, without consulting Bogardus, the other member of the committee.

There is a general rule that, " where several persons are associated in a private trust or agency, all must concur in order to bind their principal." (*Low* v. *Perkins*, 10 *Verm.* 532. *Johnston* v. *Bingham*, 9 *Watts & Serg.* 56. *Union Bank* v. *Beirne*, 1 *Grat.* 231. *Green* v. *Miller*, 6 *John.* 39. 8 *Cowen*, 583. *Jewett* v. *The Town of Alton*, 7 *New Hamp.* 253. 3 *Comst.* 396. *Perry. et al.* v. *Tynen*, 22 *Barb.* 137.) But it has been held that agents appointed in general terms, by part owners of a vessel, to make purchases, may purchase separately. (*French* v. *Price et al.*, 24 *Pick.* 13.) It was held in *Wells and Webb* v. *Gates and others*, (18 *Barb.* 554,) where seventy-five persons formed an association for the purpose of establishing a newspaper, and appoined three persons to manage the business, that the associates were bound by the acts of two of the managers, who contracted a debt, although it did not appear that the third manager conferred and acted with them. But the associates in that case were partners; whereas the defendants in this case were not partners. And it was decided in *Godfrey* v. *Saunders*, (3 *Wils.* 73,) that where there is a joint consignment of goods to two factors for sale, each of them will be considered to possess the whole power over such goods, for the purposes of the consignment, whether they are partners or not—the mere fact of the joint consignment being taken to import a consent on the part of the consignor, that the consignees should trust one another in the business. (*See also Dickson* v. *Lodge*, 1 *Stark.* 226.)

But I am of the opinion we need not decide the naked question whether two of the defendants' committee could

make a valid contract for the sale of the cheese without consulting the third member of the committee; for the reason that, in my judgment, the facts and circumstances of the case justify the inference that such third member of the committee and the defendants had assented that the two members of the committee, whom the plaintiffs claim made the contract in question in this case, might sell the cheese made at the factory, from time to time, without consulting the third member of the committee; and that this member of the committee assented to the sale in question, except as to giving the plaintiffs a short time in which to pay the balance for the cheese, and did not object to the sale on the ground that it had been made without his knowledge or consent. And I shall hold that the portion of the charge of the judge to the jury I have been considering, was correct upon the evidence.

If the sum of $1000 was deposited by the plaintiffs in Barber's Bank, with the knowledge and consent of two of the committee, to the credit of one of them, as a payment towards the cheese, on the day the contract was made, that was a payment on the contract, at the time it was made, and obviated the statute of frauds. Which facts the jury must have found upon the evidence.

The defendants' refusal to deliver the cheese to the plaintiffs on the contract, as the jury have found it was made, and their sale of the cheese to other persons, rendered it unnecessary for the plaintiffs to offer to pay the unpaid portion of the purchase price of the cheese.

It cannot be said that the verdict was against the evidence; and I am of the opinion the evidence was sufficient to make the verdict of the jury conclusive upon the questions of fact in the case.

My conclusion is, that no error was committed by the judge that would justify us in setting aside the verdict and granting a new trial. And that the order of the spe-

cial term, denying the defendants' motion for a new trial, should be affirmed, with costs; and that the plaintiffs should have judgment on the verdict, with costs.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, May 7, 1872. *Miller,*P. J., and *P. Potter* and *Balcom,* Justices.]