## HENRY W. PARKER v. BENJAMIN PETTIT.

1. A contract by one who has a quantity of straw on hand, to sell all he has to spare, not exceeding three tons, is not void for uncertainty, in not expressing the quantity of straw contracted to be sold ; the quantity agreed to be sold can be ascertained by extrinsic evidence.
2. The general rule is, that the vendee cannot sue for the non-delivery of goods purchased, unless the price has been paid or tendered, if no period of credit has been agreed upon.
3. But payment or tender of the price, as a condition precedent to the right to sue, may be waived.
4. Where the vendor, before the time for the performance of his contract of sale, has disabled himself from performing it by selling and delivering the goods to a third person, neither a demand of performance nor a tender of the consideration money by the vendee, is necessary in order to enable the latter to sue for the breach of the contract.

On *certiorari* to Monmouth Pleas.

In October, 1879, the plaintiff and defendant verbally agreed together as follows : The plaintiff agreed to buy from the defendant, and the defendant agreed to sell to the plaintiff, all the rye straw which the defendant had to spare. The agreement was made at the plaintiff's place, the straw being at the defendant's place at the time. It was understood by the parties that this quantity would not exceed three tons, and in agreeing to sell what he had to spare, the defendant did not agree to sell all the straw he

had ; it was not agreed between the parties by whom, when, or how the quantity of straw was to be determined. The price agreed upon was $6 a ton, to be delivered at the defendant's place. No time was fixed for payment, the plaintiff saying to the defendant that if the defendant wanted the money before the plaintiff got the straw, he, the defendant, should come to the plaintiff for it. Plaintiff was to get the straw when he wanted it, it being understood that he would take one load of the straw before Christmas of that year, and the balance a little later. No money was paid at the time of the agreement, nor was any part of the straw then delivered.

The defendant sold, in September preceding this agreement, one-half ton of rye straw to Richard Van Horn, and delivered the same in November following. He also sold, about December 1st following the agreement, some straw to C. W. Hendrickson, and delivered the same, viz., sixteen hundred and forty-six pounds of long rye straw, and six hundred and eighty-three pounds of tangled rye straw, about December 9th. The defendant also used a small quantity of rye straw (less than five hundred pounds) in binding up his cornstalks. This was all the rye straw defendant had at the time of his agreement.

About a month after the agreement, plaintiff arranged with one Cottrell to cart the straw for him, and being told that the scales at Smithburg were broken, told Cottrell to weigh a certain number of sheaves, and, by the average weight of a sheaf, to determine the weight of the whole load. Cottrell saw defendant, (not at defendant's place,) and told him he was coming after straw, and how he proposed to determine weight of load. Defendant said to Cottrell that he could not have the straw ; that it was no use for him to go, because plaintiff would not be satisfied if the straw was weighed that way, and because he, the defendant, had no pay for the straw.

Defendant also said to Cottrell that plaintiff fooled him on hay, and he was going to let plaintiff sweat on the straw. Cottrell did not offer to pay for the straw. Cottrell soon after informed plaintiff of what defendant had said to him.

Afterwards, plaintiff arranged with one Applegate to cart the straw for him.   Applegate saw defendant, (not at defendant's place,) and told him that he, Applegate, was coming to get straw for plaintiff.   Defendant told Applegate that it was no use to come, as he was not going to give it to him.   Nothing was said by either as to how it was to be weighed, or about money, nor was any money offered by Applegate.   Applegate soon informed plaintiff of what defendant had said to him. Afterwards, and about December 9th of the same year, plaintiff sent one Clevenger, his workman, for some of the straw with a team, with a written order for delivery of one-third of three tons.   Clevenger met defendant near defendant's place, coming with a load of rye straw, being the rye straw sold by defendant to C. W. Hendrickson, and informed defendant of his errand and the order.   Defendant refused to deliver the straw to Clevenger, because, as defendant then said, the load he then was carting was all the rye straw he had.   Clevenger, soon after, informed plaintiff of the result of his errand.

No money was tendered by Clevenger to defendant.

Afterwards, and about December 27th, 1879, plaintiff began suit against defendant for breach of his agreement, and was non-suited.   Afterwards, and about August 4th, 1880, plaintiff tendered the sum of $18 in legal tender money to defendant in Freehold, not at defendant's place.   No demand was made for the delivery of the straw at that time by plaintiff, defendant refusing the money, saying plaintiff did not owe defendant.   It was shown in evidence that rye straw was worth $12 per ton about a month after the agreement, and $15 per ton about December 9th, 1879.   There was no evidence of any tender of money to defendant by plaintiff, or any one for him, except August 1st, 1880, as above stated.   It did not appear by the evidence that the defendant had ever demanded from plaintiff the price of the straw or any part of it.

Argued at June Term, 1881, before Justices DEPUE and VAN SYCKEL.

For the plaintiff in *certiorari*, *C. Robbins.*

*Contra, W. H. Vredenburgh.*

The opinion of the court was delivered by

DEPUE, J. The plaintiff's action is founded on an executory contract for the sale of a certain quantity of straw. In his statement of demand he avers that on the 24th of October, 1879, he purchased of the defendant and the defendant sold to him three tons of rye straw for the price of $6 a ton, to be delivered at the defendant's barn; that the defendant refused to deliver the straw on demand; whereupon the plaintiff brings his suit for damages. The suit was brought on the 23d of August, 1880. Before the justice the plaintiff recovered judgment for damages and costs. An appeal was taken to the Court of Common Pleas, and on a trial in that court judgment was given for the defendant.

The facts found by the Court of Common Pleas appear in the preceding state of the case, which was returned with the writ of *certiorari.*

The contract found by the Common Pleas was valid and binding as an executory agreement to sell and deliver. The vendor was the owner of the goods which were the subject matter of the contract at the time the contract was made. The contract price is under the sum named in the statute of frauds. *Rev., p.* 445, § 6. The contract is not void for uncertainty in not expressing the quantity of straw the vendor contracted to sell. That can be ascertained by extrinsic evidence. *Id certum est quod certum reddi potest.* If there was no other satisfactory evidence on that subject, the quantity of straw the defendant sold to Hendrickson after the contract with the plaintiff was made, was competent evidence of the quantity he had to spare.

The agreement between the parties being valid and bind-

ing, an action will lie for a breach of it. The distinction is between an actual sale and an executory agreement of sale. In a bargain and sale the thing which is the subject of the contract becomes the property of the buyer ; in an executory agreement the goods remain the property of the vendor until the contract is executed. In the one case the vendor sells to the vendee ; in the other case he promises to sell. In a bargain and sale, if the buyer has performed all the conditions which entitle him to possession, he may sue in trover or replevin ; on an executory contract to sell, the buyer's only remedy for a refusal to deliver is by an action for damages. *Benj. on Sales* 3, 213, 664.

The Court of Common Pleas gave judgment in favor of the defendant on the ground that the plaintiff had neither paid nor tendered the price of the straw.

The general rule is that the vendee cannot sue for the non-delivery of goods purchased unless the price has been paid or been tendered, if no period of credit has been agreed upon. 1 *Chitty on Cont.* 618 ; *Leonard* v. *Davis*, 1 *Black (U. S.)* 476.

The tender of the 4th of August, 1880, was not made at the proper time. The contract was to be performed by the delivery of the straw during the winter of 1879–80—somewhere about Christmas.

But payment or tender of the price as a condition precedent to the right to sue may be waived. The law does not compel any one to do a thing which is vain and fruitless—*lex neminem coget ad vena seu inutilia.* Any one bound to do a particular thing must either do it or offer to do it; and if no objections are made, he must show that he made the tender. But this is not necessary, if the other party, by his conduct, has dispensed with a regular tender. *Blight* v. *Ashley, Peters C. C.* 15.

There was ample proof in this case that the defendant, by his conduct, had absolved the plaintiff from the obligation to make a tender. On two occasions before the time of performance—those testified to by Applegate and Clevenger—the de-

fendant had refused to let the plaintiff have the straw, in such a manner as clearly to indicate that he did not intend to perform his contract. Such refusal was unretracted down to the time when performance was to be made. It was such a refusal as—being unretracted—though it did not of itself amount to a breach of the contract so as to authorize a suit before the time of performance arrived, was evidence of a waiver and dispensed with performance by the other party of the acts required to be done by him under the contract. *Ripley* v. *McClure*, 4 *Exch.* 344; *Cort & Gee* v. *Ambergate, &c., Co.,* 17 *Q. B.* 127; *Benj. on Sales,* 559; *Philpotts* v. *Evans,* 5 *M. & W.* 475; 2 *Parsons on Cont.* 665. The defendant had also disabled himself from performing the contract. He had, before the time for the delivery of the goods to the plaintiff, sold and delivered the straw to a third person. Where the vendor, before the time for the performance of his contract of sale, has disabled himself from performing his contract, neither a demand of performance nor a tender of the consideration money, nor an averment of the plaintiff's readiness to accept the goods and pay for them, is necessary. *Bowdell* v. *Parsons,* 10 *East* 359; *Lovelock* v. *Franklyn,* 8 *Q. B.* 371; *Short* v. *Stone, Id.* 358; 1 *Add. on Cont.,* § 323. " A party," says Lord Lyndhurst, C. B., " can only be obliged to make a tender when by making it he could obtain the possession of the goods." *Jones* v. *Cliff,* 1 *C. & M.* 541. Where the vendor has refused to deliver the property sold to the purchaser, and has sold the same to other persons, an offer to pay the purchase money before suing for damages is unnecessary. *Hawley* v. *Keeler,* 62 *Barb.* 231. A tender under the circumstances of this case, would have been an idle ceremony, and was unnecessary.

The judgment should be reversed, with costs.